Mr. Chief Justice Sharkey
delivered the opinion of the court.
Moore filed his bill in the vice chancellor’s court, to rescind a contract, by which he had purchased a lot in Holly Springs, of one James Earp, and for an injunction to stay the collection of the purchase money, judgment at law having been obtained *599 against him by Holloway, as indorser of the note. Earp failed to answer, and a pro confesso was taken ; but Holloway answered, denying the allegations of the bill. The cause was set for hearing, on the pleadings and depositions, and a decree was rendered for the complainant, from which Holloway has brought the case up by writ of error.
From the allegations in the bill it appears, that in 1838 one John Reynolds purchased the lot in question, from 'the commissioners of the town of Holly Springs, who gave him a title bond, on payment of part of the purchase money. Reynolds afterwards died, leaving eight heirs at law. After his death, his brother, Francis Reynolds, one of the heirs, got possession of the bond, and sold the lot to Earp, and fraudulently procured a deed to be made by the commissioners to Earp, who had full knowledge of the fact. Moore purchased of Earp, and paid part of the purchase money, and gave his note for the balance, on which suit was brought and judgment recovered in the name of Holloway, who is charged with having no interest in it. Moore received a deed from Earp, without any •knowledge of the right of Reynolds’s heirs, or the fraud that had been practised.
It is charged that Earp is insolvent, and has removed to Texas, and that Reynolds’s heirs threaten to institute suit for the lot. The deeds from the commissioners to Earp, and from him to Moore, are made exhibits to the bill; the title bond given by the commissioners to John Reynolds is set out in a deposition.
Perry G. Reynolds testified, that John Reynolds bought the lot, and paid one-third of the purchase money, taking a bond for title. John Reynolds died, leaving eight heirs. Did not know whether Earp had a deed, but he purchased it from somebody after the death of John Reynolds. That the heirs of John Reynolds talked of bringing suit for the lot. One of the commissioners was examined, and stated that the lot was sold to John H. Reynolds, and that a deed was afterwards made to James Earp, but he does not state how it happened that the deed was made to Earp. By the title bond, it ap *600 pears that Reynolds was to pay in three instalments ; but Vas not to receive a title until all the purchase money was paid.
This testimony falls short of establishing the fraud charged in the bill, neither does it establish a defective title in Earp. Although there was a pro confesso taken as to Earp, that was not evidence against Holloway, who had denied the fraud, as charged against him, and had required full proof of the allegations. As a general rule, the answer of one defendant is not evidence against his co-defendants ; and surely the failure of one to answer does not entitle the complainant to take the allegations of the bill as true, as against one who does answer. The authority cited from 2 J. J. Marshall is directly in point, and was a case like the present, in all its features, except as to the consideration of the note. Apart from the allegations of the bill, the complainant failed to make out his case.
Another view of this question makes it equally conclusive against the complainant. Earp, it seems, got a title, and there is no proof that he acquired it by fraud. On the contrary, the record discloses a state of facts, from which it seems probable that it was fairly acquired. Reynolds only held a bond for title, when he should pay the purchase money. He, therefore, had no right to receive a title until he paid for the lot. If he failed to pay at the lime stipulated, the vendors had a right to consider the contract at an end. It is like the case of Hatch v. Cobb, 4 Johns. Ch. R. 559. The vendee had taken a title bond, but failing to make his payments, the vendor sold to another, and the court refused to decree a specific performance ; because, by the default of the vendee, the vendor had a right to consider the contract as at an end. To the same effect tvere the cases of Kemphill v. Stone, 5 Johns. Ch. R. 193, and Benedict v. Lynch, 1 Ib. 370.
It is probable, that the deed from the commissioners to Earp, was made in consequence of the default of Reynolds. This presumption derives strength from the circumstance, that the deed, to Earp bears date some time after Reynolds’s last *601 instalment became due. He had also failed to make the second payment.
The decree must be reversed, and a decree rendered for appellant.